jp

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

Pro Fit Management, Inc.,           )
                                    )
    Plaintiff,                      )
                                    )
vs.                                 )       Case No. 08-2662-JAR
                                    )
Lady of America Franchise Corp.,    )
                                    )
    Defendant.                      )
                                    )

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff is a corporation with its principal place of business in Kansas.  Defendant is a corporation with its principal place of business in Florida.  Plaintiff has brought this action against defendant alleging the following federal violations: copyright infringement in violation of 17 U.S.C. § 101 <u>et seq.</u>; a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 <u>et seq.</u>; trademark infringement in violation of 15 U.S.C. §§ 1114(1) and 1125(a); unfair competition in violation of 15 U.S.C. § 1125; and a violation of the RICO statute, 18 U.S.C. § 1962(c).  Plaintiff also alleges the following state law violations: breach of contract; tortious interference with contract; unfair competition; and trademark infringement in violation of K.S.A. 81-213.

This case is before the court upon defendant's motion to dismiss.[1]  Defendant seeks dismissal on the grounds that this

---

    [1]Doc. No. 11.

court does not have personal jurisdiction over defendant and that plaintiff's first amended complaint fails to state a claim.

The Court concludes that it has personal jurisdiction, and that defendant's motion to dismiss pursuant to Rule 12(b)(6) should be  granted with respect to Counts V and IX and otherwise denied.

I.   PERSONAL JURISDICTION

    A.   Facts

The following factual allegations are taken from three sources: the first amended complaint (Doc. No. 5, hereinafter referred to as "FAC"); the affidavit of Mike Murphy, the owner and president of plaintiff (Doc. No. 5, Attachment # 1, hereinafter referred to as "Murphy"); and the affidavit of Jill Cook, general counsel and executive vice-president of defendant (Doc. No. 12, Attachment # 1, hereinafter referred to as "Cook").

Plaintiff was formed in 2001 by Mike Murphy.[2]  Plaintiff specializes in providing advertising and marketing programs and materials for health clubs.[3]   Defendant owns and franchises women-focused health clubs.[4]

Plaintiff has created, marketed, sold, and distributed

_____

[2]FAC, ¶ 8.

[3]FAC, ¶ 11.

[4]Cook, ¶¶ 5,6.

FOREVER FIT proprietary materials to health clubs since 2006.[5]
Plaintiff has a registered trademark and copyrights for its
FOREVER FIT program and materials.  The materials include
customized postcards, postal map, program manual, promotional
poster and a CD-ROM that includes telephone scripts, telephone
inquiry logs, health and fitness profiles, sales presentation
sheets, member assessment forms, and a nutritional workshop
outline.[6]  The FOREVER FIT program is produced, postmarked and
printed in the State of Kansas.[7]  The FOREVER FIT proprietary
materials are distributed with a limited license agreement.[8]  The
license agreement contains a forum selection clause which
provides that all disputes are to be resolved under the laws and
jurisdiction of the State of Kansas.[9]

Defendant has over 300 franchised and company owned
corporate subsidiary clubs.  The corporate subsidiary clubs are
corporations separate from defendant, but owned by it.[10]  In the
past, some of defendant's health clubs have operated in Kansas

---

[5]FAC, ¶ 16.

[6]FAC, ¶ 17.

[7]Murphy, ¶ 8.

[8]FAC, ¶ 18.

[9]FAC, ¶ 19.

[10]Cook, ¶ 6.

and the Kansas City metropolitan area.[11]  Now, they are closed.
Defendant's last health club in Kansas closed on or about
February 11, 2007.[12]  Defendant's other franchise or corporate
subsidiary health clubs in Kansas closed in 2005 or before.[13]

Defendant claims that neither it nor its subsidiaries
entered into a license agreement for the FOREVER FIT program.[14]
Defendant never made payments to plaintiff.[15]  Defendant did
"publicize" the FOREVER FIT program on a website for defendant's
franchisees.[16]

Plaintiff claims:

On or about February 2007, [plaintiff] negotiated the
FOREVER FIT program for sale to the [defendant's]
franchises.  Terms of that sale included the license
agreement which has a forum selection clause which
provided that all disputes are to be resolved under the
laws and jurisdiction of the State of Kansas, including
federal courts and waiving any jurisdictional and venue
defenses . . . .[17]

Plaintiff alleges that it was a preferred vendor for defendant's
franchises and that as a franchisor, defendant "authorizes"

---

[11]FAC, ¶ 36.

[12]Cook, ¶ 17.

[13]Cook, ¶ 18.

[14]Cook, ¶¶ 21, 24.

[15]Cook, ¶ 22.

[16]Cook, ¶ 23.

[17]Murphy, ¶ 9.

preferred vendors with whom franchisees can conduct business.[18]
Plaintiff provided a copy of the FOREVER FIT program to defendant
on March 27, 2007 as part of the preferred vendor process.[19]
Plaintiff refers to this as a sale to defendant.[20]  Plaintiff's
owner states that, after March 27, 2007, plaintiff "delivered"
the FOREVER FIT program under the license agreement to nine of
defendant's franchises outside of Kansas.[21]

Plaintiff asserts that defendant unlawfully copied
plaintiff's FOREVER FIT proprietary materials; sold and/or
distributed copies of the materials; and published the materials
on an Internet website.[22]  Plaintiff contends that defendant has
used the FOREVER FIT mark in its advertising, and also that
defendant has removed plaintiff's FOREVER FIT mark and affixed
defendant's "Waist Away" indicia, but otherwise maintained the
content of the documents.[23]  Plaintiff also asserts that
defendant used the FOREVER FIT mark on its "Waist Away" program
in such a way that it appears that some of the materials

---

[18]Murphy, ¶ 14.

[19]FAC, ¶ 32; Murphy, ¶ 12.

[20]FAC, ¶ 32.

[21]Murphy, ¶ 13.

[22]FAC, ¶¶ 38, 39.

[23]FAC, ¶¶ 61, 52.

originated from or are endorsed by plaintiff.[24]  Thus, according to plaintiff, the "Waist Away" mark causes confusion in the market and unfairly competes with plaintiff's FOREVER FIT program.[25]

Plaintiff alleges that defendant has become the second largest distributor of FOREVER FIT proprietary materials, distributing hundreds, if not thousands, of infringing materials over the Internet.[26]  Plaintiff asserts that, through the "preferred vendor" designation, defendant acts as a gatekeeper preventing plaintiff from dealing directly with defendant's franchises.[27]  As a "preferred vendor" plaintiff had the right to sell FOREVER FIT proprietary materials directly to defendant's franchises.[28]  Plaintiff sold over 50 programs containing FOREVER FIT proprietary materials to defendant's franchises, subject to the license agreement.[29]  Plaintiff claims that defendant required plaintiff to obtain permission from defendant prior to enforcing or contacting defendant's franchises regarding violations of the license agreement and otherwise interfered with

---

[24]FAC, ¶ 60.

[25]FAC, ¶¶ 72, 73.

[26]FAC, ¶ 90.

[27]Id.

[28]FAC, ¶ 105.

[29]FAC, ¶ 114.

plaintiff's efforts to enforce its license agreement rights.[30]
Plaintiff states that defendant's conduct has caused plaintiff to
lose sales.[31]

Defendant currently has no offices, employees, health clubs,
property, bank accounts or telephone numbers in Kansas.[32]
Defendant does not advertise and is not registered to do business
in Kansas.[33] Defendant created its "Waist Away" program in
November 2008.[34] According to plaintiff, defendant announced
that plaintiff was no longer a "preferred vendor" as of January
14, 2009 because of plaintiff's efforts to enforce its rights in
FOREVER FIT proprietary materials.[35]

B.  Legal standards

"In a federal question case where a defendant resides
outside the forum state, a federal court applies the forum
state's personal jurisdiction rules 'if the federal statute does
not specifically provide for national service of process.'"[36] Of

---

[30]FAC, ¶¶ 121, 122.

[31]FAC, ¶ 93.

[32]Cook, ¶¶ 7, 16.

[33]Id.

[34]Cook, ¶ 25.

[35]FAC, ¶ 44.

[36]PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir.
1997)(quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir.
1990)).

the federal statutes alleged in the first amended complaint, only the RICO statute authorizes nationwide service of process.[37] However, nationwide service of process must satisfy "the ends of justice."[38] This is a single defendant case and the circumstances which might justify bringing defendant to this forum to defend this lawsuit are the same as the conditions which are consistent with due process and the Kansas long-arm statute.[39] In any event, as discussed later, the court shall dismiss plaintiff's RICO claim as inadequately pleaded. Therefore, the court shall refer to the Kansas personal jurisdiction rules.[40]

Plaintiff has the burden of establishing personal jurisdiction over defendant.[41] In the absence of an evidentiary hearing, plaintiff must make only a prima facie showing of

---

[37]See 18 U.S.C. § 1965(b); Cory v. Aztec Steel Bldg., 468 F.3d 1226, 1230-31 (10th Cir. 2006) cert. denied, 550 U.S. 918 (2007).

[38]Cory, 468 F.3d at 1231.

[39]See PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998)("a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant").

[40]See FED. R. CIV. P. 4(k)(1)(A).

[41]Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1295 (10th Cir. 2004).

jurisdiction to defeat a motion to dismiss.[42]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[43]  Allegations in a complaint are accepted as true to the extent that they are uncontroverted by submitted affidavits.[44]  When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[45]  The court "must resolve all factual disputes in favor of the plaintiff."[46]  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[47]

The Kansas long-arm statute is construed liberally so as to

---

[42]Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

[43]OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998).

[44] Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989); Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984) cert. denied, 471 U.S. 1010 (1985).

[45]Pytlik, 887 F.2d at 1376.

[46]Bell Helicopter Textron, 385 F.3d at 1295.

[47]OMI Holdings, 149 F.3d at 1091 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

allow jurisdiction to the full extent permitted by due process.[48]

So the issue before the court is whether the exercise of

jurisdiction by this court satisfies the due process requirements

of the Constitution.

For the court's exercise of jurisdiction to comport with due

process, defendant must have "minimum contacts" with the State of

Kansas so that defending the lawsuit in this state will not

"'offend traditional notions of fair play and substantial

justice.'"[49]

"Minimum contacts" can be established in two ways:

First, a court may, consistent with due process, assert
_specific_ jurisdiction over a nonresident defendant "if
the defendant has 'purposefully directed' his
activities at residents of the forum, and the
litigation results from alleged injuries that 'arise
out of or relate to' those activities." Burger King,
471 U.S. at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528
(internal quotations omitted).  Where a court's
exercise of jurisdiction does not directly arise from a
defendant's forum-related activities, the court may
nonetheless maintain _general_ personal jurisdiction over
the defendant based on the defendant's general business
contacts with the forum state.[50]

The Tenth Circuit has further explained:

In the tort context, we often ask whether the

_____

[48]Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17
F.3d 1302, 1305 (10th Cir. 1994) (citing Volt Delta Res., Inc. v.
Devine, 241 Kan. 775, 740 P.2d 1089, 1092 (1987)).

[49]Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d
1063, 1070 (10th Cir. 2008)(quoting Int'l Shoe Co. v. Washington,
326 U.S. 310, 316 (1945)).

[50]Id. (quoting Int'l Shoe Co., 326 U.S. at 316).

10

nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. . . . In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state.[51]

While not explicitly declaring so, plaintiff appears to advocate "specific jurisdiction" in this case.

C. <u>Has plaintiff made a prima facie showing of jurisdiction?</u>

1. <u>Minimum contacts</u>

The court shall look at this matter in a contractual and a tort context. Plaintiff alleges in its amended complaint that it sold FOREVER FIT proprietary materials to defendant on or about March 27, 2007 and that this sale was subject to a licensing agreement which was breached by defendant. Defendant has submitted an affidavit from its general counsel and executive vice president stating that it and its subsidiaries have not entered into a license agreement with plaintiff for the FOREVER FIT program and that defendant has never made payments to plaintiff.[52] The affidavit from plaintiff's owner states that plaintiff "negotiated the FOREVER FIT program for sale" to

---

[51]<u>OMI Holdings, Inc.</u>, 149 F.3d at 1090-91.

[52]Cook, ¶¶ 21, 22, 24.

defendant's franchises and that the program was provided to defendant on or about March 27, 2007.[53]  As defendant notes, there is no signed license agreement or other written contract before the court.

To determine whether a defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, courts often look at "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"[54]  Even an unsigned contract may provide proof of a contract if it clearly references the parties and evidences prior negotiations and the future consequences of an intended business relationship, particularly when there is other evidence of the business relationship.[55]

In AST Sports Science, Inc. v. CLF Distribution Ltd.,[56] the defendant allegedly approached the plaintiff about becoming the plaintiff's European distributor of health, nutrition and vitamin products.  Although no signed contract was in evidence, there was evidence of on ongoing business relationship through phone calls,

----

[53]Murphy, ¶¶ 9, 12.

[54]514 F.3d 1054, 1058 (10th Cir. 2008)(quoting Burger King, 471 U.S. at 479).

[55]Id. at 1058-59.

[56]Id.

letters, emails and fax messages.  Part of this relationship
involved plaintiff filling product orders from defendant.  This
was sufficient for jurisdiction.  On the other hand, as
demonstrated in Pytlik v. Professional Resources, Ltd.,[57] an
unsigned contract which does not make reference to the parties
and the absence of other evidence proving a business relationship
with a plaintiff in the forum state, falls short of a prima facie
showing of personal jurisdiction.[58]  In Pytlik, an Oklahoma
plaintiff sued an Italian corporation alleging that he entered an
employment contract with the company to work in Italy.  The
employment agreement did not mention the Italian company and
there was no other evidence that the company or its agents
conducted business in Oklahoma or availed itself of Oklahoma's
laws.

This case falls somewhere between the fact situations
described in AST Sports and Pytlik.  The unsigned license
agreement resembles the unsigned contract in Pytlik.  But, there
is evidence of negotiations between plaintiff and defendant.
Materials were delivered from plaintiff to defendant and
plaintiff has alleged a continuing relationship with defendant as
a "preferred vendor."  Furthermore, these contacts are tied to
the sale and distribution of the proprietary materials at issue

---

[57]887 F.2d 1371 (10th Cir. 1989).

[58]Id. at 1376.

13

in this case.

Plaintiff also alleges that defendant committed tortious acts directed at Kansas which justify the exercise of personal jurisdiction by this court. The minimum contacts analysis in this context allows the exercise of jurisdiction when there is a prima facie showing that defendant, first, intentionally acted, second, in a manner expressly aimed at Kansas with, third, knowledge that the brunt of the injury would be felt in Kansas.[59] However, "[t]he mere allegation that an out-of-state defendant has . . . committed [] business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."[60]

The Tenth Circuit, as well as other courts, require a plaintiff to present "something more" than the injuries a plaintiff allegedly suffered in order to show that a defendant aimed or targeted its conduct at the forum state. In Dudnikov, where the plaintiff sought a declaratory judgment of copyright noninfringement, the Tenth Circuit held that the "something more" was undisputed evidence that defendant acted to cancel

---

[59]Dudnikov, 514 F.3d at 1072 (analyzing Calder v. Jones, 465 U.S. 783 (1984)).

[60]Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1079 (10th Cir. 1995).

plaintiff's eBay auction in Colorado.[61]  In <u>Toytrackerz LLC v.</u>

<u>Koehler</u>,[62] which involved a claim of trademark infringement,

websites which posted misleading and negative comments about the

Kansas plaintiff company provided the additional contact – the

"something more" – to make a prima facie showing of personal

jurisdiction for two defendants, while a third defendant was

dismissed because of the absence of additional evidence focusing

on Kansas.[63]  In <u>Regional Airline Management Systems, Inc. v.</u>

<u>Airports USA, Inc.</u>,[64] another trademark infringement case, there

was no additional evidence of intentional conduct aimed at the

forum state, so the motion to dismiss for lack of personal

jurisdiction was granted.[65]  While in <u>System Designs, Inc. v. New</u>

<u>Customware Co.</u>,[66] the long-term pattern of trademark infringement

and a website intended to reach potential customers in the forum

state counted as additional evidence of conduct expressly aimed

at the forum state.[67]

---

[61]<u>Dudnikov</u>, 514 F.3d at 1077.

[62]No. 08-2297-GLR, 2009 WL 1505705 (D. Kan. May 28, 2009).

[63]<u>Id.</u> at *14.

[64]No. 06-cv-01758-WYD-CBS, 2007 WL 1059012 (D. Colo. Apr. 4, 2007).

[65]<u>Id.</u> at 6-7.

[66]248 F. Supp. 2d 1093, 1099-1100 (D. Utah 2003).

[67]<u>Id.</u>

Here, plaintiff asserts that defendant intentionally infringed upon plaintiff's registered copyrights and trademarks and committed other intentional torts and violations of federal statutes. There is evidence that defendant purposefully directed its activities at Kansas, not only because this is where plaintiff would suffer economic harm from defendant's actions. Defendant negotiated with plaintiff. Defendant allegedly copied and used materials which emanated from Kansas. The Register of Copyrights and the Register of Trademarks list relevant marks and protected materials in this case as owned by plaintiff at Overland Park, Kansas on November 16, 2009.[68] In addition, plaintiff alleges that defendant interfered with plaintiff's efforts to conduct its business in Kansas. This is sufficient in the court's opinion to satisfy the minimal burden of establishing a prima facie case of jurisdiction.

The Court must determine next whether there is a nexus between defendant's contacts with Kansas and plaintiff's causes of action. Plaintiff's claims regarding the violation of trademark and copyright rights, unfair competition, tortious interference with contract, and breach of contract arise from defendant's alleged negotiations for access to the FOREVER FIT program, use or misuse of that program, distribution or communication of the program, and alleged interference with

---

[68]FAC, Attachments 6 and 7.

plaintiff's efforts to protect its registered rights in connection with the program. Therefore, we find that plaintiff has established that defendant had minimum contacts with Kansas for the purpose of due process analysis.

### 2. Reasonableness

Once a plaintiff has made a minimum contacts showing, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[69] The considerations most often discussed are: 1) the burden on defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.[70] Defendant's brief spends little time on these points, focusing mostly upon the alleged weakness of plaintiff's minimum contacts showing. A court may consider the strength or weakness of a defendant's contacts with the forum state in evaluating the reasonableness factors and whether to exercise jurisdiction.[71] In OMI Holdings, Inc., the Tenth Circuit found that the

---

[69]Burger King, 471 U.S. at 477.

[70]OMI Holdings, Inc., 149 F.3d at 1095.

[71]Id. at 1095-96.

reasonableness inquiry dictated against exercising jurisdiction in spite of the defendants' minimum contacts with Kansas.[72]  It was significant in <u>OMI Holdings</u> that neither the plaintiff nor the defendants were Kansas residents or conducted business in Kansas.  In contrast, in the present case defendant has presented no circumstances that compel a finding that exercising personal jurisdiction would be unreasonable.

   D.  <u>Conclusion</u>

   In summary, the court finds that plaintiff has made a prima facie showing of personal jurisdiction and that defendant has not shown that the exercise of jurisdiction would be unreasonable. Therefore, the court shall not dismiss this case for lack of jurisdiction.  This ruling is made without prejudice to raising the matter again in the context of summary judgment.

II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

   A.  <u>Legal Standards</u>

   To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[73] "The mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the

---

[72]<u>Id.</u> at 1096-98.

[73]<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007).

pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims."[74] "Plausibility" does not mean "likely to be true."[75] "'[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[76] "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[77] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[78] "The complaint 'does not need detailed factual allegations,'" to

---

[74]<u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007).

[75]<u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008).

[76]<u>Id.</u>, (quoting <u>Twombley</u>, 550 U.S. at 570).

[77]<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(quoting <u>Twombly</u>, 550 U.S. at 555, 557).

[78]<u>Id.</u>

surmount of motion to dismiss for failure to state a claim.[79]

Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that recovery is very remote and unlikely."[80]

If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the motion to a Rule 56 motion for summary judgment.[81]  However, the court may consider documents which are referred to in the complaint.[82]

B.  Analysis

    1.  Count I

Count I of the first amended complaint alleges copyright infringement in violation of 17 U.S.C. § 101 et seq.  To state a claim for copyright infringement, plaintiff must allege 1) ownership of a valid copyright and 2) that defendant copied constituent elements of the work that are original.[83]

Plaintiff claims that it has a registered copyright upon its

---

[79]Christy Sports, LLC v. Deer Valley Resort Co., 555 F.3d 1188, 1191 (10th Cir. 2009)(quoting Twombly, 550 U.S. at 555).

[80]Twombly, 550 U.S. at 556 (internal quotations omitted).

[81]Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001) rev'd on other grounds, 537 U.S. 79 (2002).

[82]See GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

[83]Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir.) cert. denied, 537 U.S. 1066 (2002).

FOREVER FIT program, including the program guide, operations manual, compact disc and postcard.[84]  Plaintiff further claims that the compact disc and program guide includes an introduction, marketing materials, a telephone script, fitness profile, telephone inquiry log, program outline, assessment sheet, price sheet, 12-week addendum, 12-week attendance chart, schedule of nutritional seminars, and seminar reminder call log.[85]  Plaintiff claims that defendant copied "all, or a substantial portion" of the materials.[86]  Three examples of copied materials are alleged in the first amended complaint.  A "Health & Fitness Profile," a "12 Week Fitness Assessment," and a goals and schedule document appear to have been copied.[87]  Plaintiff has also attached the Program Guide and Operations Manual as an exhibit to the first amended complaint.[88]

Defendant alleges that the complaint does not put defendant on notice as to which documents were copied.  The Court rejects this allegation.  Specific documents are attached as exhibits. Even though plaintiff states that "all or a substantial portion" of the documents were copied, the Court believes that is

---

[84]FAC, ¶ 46.

[85]FAC, ¶ 47.

[86]FAC, ¶ 50.

[87]FAC, compare Exhibits E, F, and G to Exhibits H, I, and J.

[88]FAC, Exhibit A.

sufficiently specific to notify defendant of the documents at issue in this case.  Defendant can examine the exhibits and state whether or not it copied them.

Defendant further alleges that some of the documents are not protected under the copyright statute.  Defendant claims that some of the documents are not protected because they are mere "blank forms" and that some documents are not protected under the "merger doctrine" and the "scenes a faire" doctrine.[89]  Plaintiff has not responded to this somewhat underdeveloped contention, which is made in three sentences in defendant's memorandum in support of the motion to dismiss.  Despite the absence of a response from plaintiff, the Court declines to grant the motion to dismiss Count I without prejudice to raising the issues again. The main question here is whether plaintiff has stated a plausible claim of copyright infringement.  The Court believes plaintiff has met this goal.  The issue of "blank forms" does not reach the entirety of plaintiff's claim and the "merger doctrine" and "scenes a faire" doctrine are better examined after a more

---

[89]The "merger doctrine" holds that expressions are not protected when there are so few ways of expressing an idea that protecting the expression would effectively accord protection to the idea itself.  BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc., 999 F.2d 1436, 1442 (11th Cir. 1993) cert. denied, 510 U.S. 1101 (1994).  The "scenes a faire" doctrine excludes copyright protection from elements of work which are dictated by practical reality.  Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 535 (6th Cir. 2004).

comprehensive argument and, perhaps, a better-developed record.[90]

     2.  <u>Count II</u>

In Count II, plaintiff alleges a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, <u>et seq</u>.  Plaintiff alleges that defendant "intentionally removed . . . copyright management information from the face of several, if not all, documents included in the FOREVER FIT proprietary materials."[91] As defendant notes, this allegation appears connected to 17 U.S.C. § 1202(b)(1) which provides:

> No person shall, without the authority of the copyright owner or the law - - (1) intentionally remove or alter any copyright management information . . . knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

Defendant claims that this count should be dismissed because:  1) plaintiff failed to allege the above-quoted knowledge element in the amended complaint; 2) plaintiff fails to identify the specific documents from which "copyright management information" was removed; and 3) Count II does not refer to

---

[90]<u>See</u> <u>MDM Grp. Assocs., Inc. v. Emerald Isle Realty, Inc.</u>, No. 2:07-CV-48-D, 2008 WL 2641271, at *3-4 (E.D.N.C. July 1, 2008)(finding that it would be premature to decide a "merger doctrine" issue at an early stage in the proceedings); <u>AEI Fund Mgmt., Inc. v. Geneva Org., Inc.</u>, No. 06-1633 ADM/AJB, 2006 WL 2943093, at *3 (D. Minn. Oct. 13, 2006)(same); <u>see also</u>, <u>MDM Grp. Assocs., Inc. v. ResortQuest Int'l, Inc.</u>, No. 06-cv-01518-PSF-KLM, 2007 WL 2909408, at *4 (D. Colo. Oct. 1, 2007)(rejecting a "merger doctrine" argument on a Rule 12(b)(6) motion).

[91]FAC, ¶ 57.

"copyright management information" as the term is intended in the statute. The Court rejects these arguments.

Plaintiff alleges that defendant copied plaintiff's copyrighted materials in an attempt to encourage the willful violation of plaintiff's rights associated with its FOREVER FIT program.[92] Plaintiff also alleges that in the course of defendant's infringement of plaintiff's copyrighted material, defendant removed the copyright notice on the face of several documents which were infringed, "which may be prohibited by . . . 17 U.S.C. § 1201."[93] This is sufficient to allege knowledge or reasonable grounds to know that defendant's actions would "induce, enable, facilitate or conceal" an infringement.

As noted with regard to Count I, plaintiff has identified and attached documents which relate to the violations claimed in the complaint. This is sufficient to identify the documents at issue in this case.

Finally, there is a split of authority regarding the meaning of "copyright management information." The cases cited by defendant hold "copyright management information" refers to technological measures that protect copyrighted works or circumstances related to the Internet, electronic commerce or

---

[92]FAC, ¶ 42.

[93]FAC, ¶ 43.

other technological processes.[94]  Other cases, which advocate
more of a plain language construction of the statute hold that
"copyright management information" includes non-digital
information and a lesser involvement of technological
processes.[95]  These cases acknowledge the broad statutory
definition of "copyright management information":

> "any of the following information conveyed in
> connection with copies or phonorecords of a work or
> performances or displays of a work, including in
> digital form, . . .: (1) The title and other
> information identifying the work, including the
> information set forth on a notice of copyright.  (2)
> The name of, and other identifying information about,
> the author of a work.  (3) The name of, and other
> identifying information about, the copyright owner of
> the work, including the information set forth in a
> notice of copyright . . . (6) Terms and conditions for
> use of the work.  (7) Identifying numbers or symbols
> referring to such information or links to such
> information.  (8) Such other information as the
> Register of Copyrights may prescribe by regulation,
> except that the Register of Copyrights may not require
> the provision of any information concerning the user of

---

[94]See IQ Grp., Ltd. v. Wiesner Publ'g, LLC, 409 F. Supp. 2d
587, 598 (D.N.J. 2006)(CMI refers to technological measures that
protect copyrighted works); Textile Secrets Int'l, Inc. v. Ya-Ya
Brand, Inc., 524 F. Supp. 2d 1184, 1201 (C.D. Cal. 2007)(CMI was
not intended to apply to circumstances that have no relation to
the Internet, electronic commerce, automated copyright
protections or technological processes contemplated in the
statute); Silver v. Lavandeira, No. 08 Civ. 6522(JSR) (DF), 2009
WL 513031, at *2 (S.D.N.Y. Feb. 26, 2009)(following the IQ Group
decision).  Both IQ Group and Textile Secrets were decided on
summary judgment motions.

[95]Jacobsen v. Katzer, 609 F. Supp. 2d 925, 934 (N.D. Cal.
2009); Fox v. Hildebrand, No. 09-2085 DSF, 2009 WL 1977996, at *3
(C.D. Cal. July 1, 2009); McClatchey v. Associated Press, 2007 WL
776103 (W.D. Pa. March 9, 2007).

a copyrighted work."[96]

At this stage, the Court believes plaintiff has alleged a facially plausible claim that defendant violated the Digital Millennium Copyright Act. While more detail could have been included, the Court is sensitive to the fact that two of the cases cited by defendant were decided upon summary judgment motions and that there are advantages to assessing a somewhat new or novel theory of liability upon a review of the actual facts.[97]

### 3. Count III

Count III asserts a trademark infringement claim in violation of 15 U.S.C. §§ 1114(1) and 1125(a). Section 1114(a) prohibits the unauthorized use of copies of a registered mark in connection with the sale or advertisement of goods. Section 1125(a) prohibits the use in commerce of names or symbols or false designations of origin which are likely to cause confusion as to the origin or sponsorship of goods, services or commercial activities.

Plaintiff alleges that defendant uses the FOREVER FIT mark "on or in connection with their 'Waist Away' program in that the mark FOREVER FIT appears on the advertising materials in such a way that it appears at least some of the materials emanate,

---

[96]17 U.S.C. § 1202(c)(emphasis added).

[97]See Jacobsen, 609 F. Supp. 2d at 934.

26

originate, were created by, or are endorsed by" plaintiff.[98]

Plaintiff further alleges that the use of the mark is "such that it does or is likely to cause confusion . . . among purchasers of the 'Waist Away' program as to its identity and origin."[99]

Defendant contends that this count should be dismissed because plaintiff fails to identify the specific "use" of an infringing mark. The Court believes the above excerpts from the first amended complaint adequately identify "use" in advertising materials. This is a plausible factual assertion. Defendant further argues that plaintiff does not explain how the alleged trademark use would likely cause confusion among consumers. In the context of the other facts alleged in the first amended complaint, it is plausible that the use of the FOREVER FIT mark on defendant's advertising would cause confusion.

The Court shall not dismiss Count III.

### 4. Count IV

Count IV of the amended complaint alleges unfair competition in violation of 15 U.S.C. § 1125. Plaintiff alleges that defendant uses "Waist Away" to identify defendant as the source of plaintiff's proprietary materials.[100] The proprietary

---

[98]FAC, ¶ 60.

[99]FAC, ¶ 61.

[100]FAC, ¶ 67.

materials are described in some detail in Count IV.[101]  Defendant

makes the same arguments against Count IV that defendant makes

against Count III.  Plaintiff's assertions are sufficient to

describe a plausible claim for unfair competition.

     5.  <u>Count V</u>

Plaintiff alleges a RICO violation, specifically 18 U.S.C. §

1962(c), in Count V.

Section 1962(c) of RICO provides:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity . . .

The elements of a viable civil RICO claim under 18 U.S.C. §

1962(c) are: 1) participation in the conduct 2) of an enterprise

3) through a pattern 4) of racketeering activity.[102]  Defendant

argues that plaintiff has failed to adequately allege each of

these elements.

Plaintiff names five persons acting as officers, employees,

agents or affiliates of defendant in a "conspiracy" to unlawfully

copy, publish and distribute FOREVER FIT proprietary materials

through an Internet website for the purpose of obtaining an

---

[101]FAC, ¶ 66.

[102]<u>Med. Supply Chain, Inc. v. Neoforma, Inc.</u>, 419 F. Supp. 2d
1316, 1328-29 (D. Kan. 2006).

unfair competitive advantage over plaintiff.[103]  Plaintiff does
not state specifically whether these persons worked for defendant
or one of defendant's franchises.  Plaintiff alleges that the
conspiracy engaged in criminal copyright infringement and the
deliberate removal of copyright notices from FOREVER FIT
materials in violation of 18 U.S.C. § 2319.[104]  Plaintiff asserts
that the Internet website controls access to the infringing
materials and provides the means for franchises to download the
infringing materials from defendant directly, and to reproduce,
display and copy the infringing materials.[105]  Plaintiff states
that copyright infringement is part of defendant's regular
business activities and that the use of infringing material by
defendant or its franchises is pervasive and ongoing.[106]
Plaintiff further contends that defendant acts as the gatekeeper
to its franchises, preventing plaintiff from dealing directly
with the franchises.[107]  Although, as mentioned, defendant
presents arguments regarding each element of a RICO claim, the
court shall focus upon the arguments regarding the "enterprise"
and "pattern" elements.

---

[103]FAC, ¶¶ 76, 84.

[104]FAC, ¶¶ 72, 82, 85.

[105]FAC, ¶ 88.

[106]FAC, ¶¶ 86, 87.

[107]FAC, ¶ 90.

a.  Enterprise

An "enterprise" for purposes of the RICO statute "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[108]   The Tenth Circuit has held that the defendant "person" in § 1962(c) must be distinct from the alleged "enterprise."[109]  Defendant asserts that plaintiff's RICO claim should be dismissed for this reason.

The only reference to "enterprise" in Count V is the following:

> [Plaintiff] alleges on information and belief that, as a consequence of the foregoing, the defendant's enterprise has become the second largest distributor of FOREVER FIT proprietary materials, distributing hundreds, if not thousands, of infringing materials via the Internet.  Lawfully competing with the defendant is impracticable, as it acts as the gatekeeper to its franchises and marketing resources and is limiting, if not preventing, [plaintiff] from dealing directly with the franchises.[110]

Plaintiff contends that it identifies several individuals operating together as "persons" conducting an illegal "enterprise."  While this is true, plaintiff does not name these

---

[108]18 U.S.C. § 1961(4).

[109]Brannon v. Boatmen's First Nat'l Bank, 153 F.3d 1144, 1146, (10th Cir. 1998); see also Multi-Media Int'l, LLC v. Promaq Retail Services, 343 F. Supp. 2d 1024, 1035-36 (D. Kan. 2004)(citing various cases for the proposition that the same entity cannot serve as both the RICO defendant and the RICO enterprise).

[110]FAC, ¶ 90.

persons as defendants.  The "person" named as a defendant is the same corporate entity which plaintiff identifies as the "enterprise."  This is a defect in pleading a RICO claim.

Plaintiff also responds that defendant and defendant's franchises worked in concert in a joint marketing venture which constitutes the RICO "enterprise."  Plaintiff's argument appears to be that defendant profited from copyright infringement by distributing infringing materials to its franchisees.[111]  This argument was rejected in other RICO cases where plaintiff alleged that franchisees were the "enterprise."  In <u>Fitzgerald v. Chrysler Corp.</u>,[112] the court held that franchisees selling Chrysler automobiles were not participating in a RICO "enterprise" with the defendant Chrysler for the alleged purpose of perpetrating warranty fraud because their role did not differ from what it would be if the franchisees were employees of a totally integrated enterprise.[113]  In <u>Stachon v. United Consumers Club, Inc.</u>,[114] the court held that franchisees who recruit members to purchase merchandise as part of a "consumers club" were not a

---

[111]Plaintiff's arguments regarding defendant's "gatekeeper" activity seem to relate to plaintiff's status as a "preferred vendor" and do not appear to describe "racketeering activity" for the purposes of the RICO statute.

[112]116 F.3d 225 (7th Cir. 1997).

[113]<u>Id.</u> at 228.

[114]229 F.3d 673, 676 (7th Cir. 2000).

distinct entity when they acted under the strict direction of the defendant "person".[115]

In addition, plaintiff's somewhat vague allegations and arguments regarding the "enterprise" claimed in this case present the kind of "moving target" that has been criticized by the Tenth Circuit.[116]  On the basis of this case law and argumentation, the Court finds that plaintiff has failed to allege an "enterprise" distinct from the defendant "person" in the FAC.

### b. Pattern

A "pattern of racketeering activity" requires proof of two or more acts of racketeering activity and proof that those acts themselves amount to, or otherwise constitute a threat of continuing racketeering activity.[117]  A plaintiff may demonstrate a threat of continuing racketeering activity by establishing

---

[115]Id. at 676; see also Entre Computer Ctrs. v. FMG, 819 F.2d 1279, 1287 (4th Cir. 1987)(rejecting argument that franchisees were the "enterprise"); Wooley v. Jackson Hewitt, Inc., 540 F. Supp. 2d 964, 973-75 (N.D. Ill. 2008)(franchisees of a tax preparation company do not constitute a RICO "enterprise" in lawsuit alleging the preparation of false returns and failure to honor guarantees).

[116]Dirt Hogs Inc. v. Natural Gas Pipeline Co., No. 99-6026, 2000 WL 368411, at *3 (10th Cir. Apr. 10, 2000) (criticizing "inconsistent and conclusory allegations employ[ing] a 'moving target' approach to describing an enterprise, by naming a string of participants, known and unknown, and alleging that they acted as an association in fact).

[117]Hall v. Witteman,--F.3d--, 2009 WL 3336105, at *6 (10th Cir. Oct. 19, 2009).

either closed-ended or open-ended continuity.[118]  Closed-ended

continuity requires "a series of related predicates extending

over a substantial period of time."[119]  "Predicate acts extending

over a few weeks or months and threatening no future criminal

conduct" are insufficient.[120]  Open-ended continuity requires a

clear threat of future criminal conduct related to past criminal

conduct."[121]  "A single scheme to accomplish one discrete goal,

directed at a finite group of individuals, with no potential to

extend to other persons or entities, rarely will suffice to

establish a threat of continuing activity."[122]

   The "acts of racketeering activity" must be violations of

certain statutes.[123]  One of the statutes is 18 U.S.C. § 2319

relating to criminal infringement of a copyright.  This statute

in turn refers to 17 U.S.C. § 506(a) which criminalizes copyright

infringement for purposes of commercial advantage or private

financial gain, as well as copyright infringement under other

---

[118]<u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 241
(1989).

[119]<u>Id.</u> at 242.

[120]<u>Id.</u> at 242.

[121]<u>Phelps v. Wichita Eagle-Beacon</u>, 886 F.2d 1262, 1273 (10th
Cir. 1989).

[122]<u>Erikson v. Farmers Grp., Inc.</u>, 151 F. App'x 672, 677-78
(10th Cir. 2005) <u>cert. denied</u>, 549 U.S. 814 (2006).

[123]18 U.S.C. § 1961(1).

circumstances.

The Court finds that plaintiff has not alleged facts which make it plausible that plaintiff could demonstrate a pattern of racketeering activity. Defendant is alleged to have copied the FOREVER FIT materials and published them on a website accessible to its franchisees. There is no allegation that defendant has engaged in multiple acts of copyright infringement over a substantial period of time. There is no allegation that defendant constitutes a substantial threat to infringe upon other protected material or to victimize other copyright holders. Plaintiff only asserts that in the future other entities may access what defendant has already copied onto defendant's website. In sum, there does not appear to be a plausible claim of closed-ended or open-ended continuity.

The case of <u>Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.</u> is analogous.[124] There, plaintiff, a computer software maker, claimed that defendant made unauthorized copies of computer software as well as backup tapes, used the copies on nondesignated equipment, and sold the copies to other users. The court affirmed summary judgment upon the RICO claim finding that the case essentially involved one victim and only two predicate acts - - the copying of the software and the backup tapes.[125] The

---

[124]883 F.2d 48 (7th Cir. 1989).

[125]<u>Id.</u> at 51.

court held that each use of the copied materials was not a new predicate act.[126]  Arguably contrary authority is found at <u>General Motors Corp. v. Ignacio Lopez de Arriortua</u>,[127] and <u>Gould Inc. v. Mitsui Mining & Smelting Co.</u>[128]  However, both of these cases involve more than one victim, the theft or copying of a much greater amount of materials, and a greater number and variety of predicate acts.  This distinguishes those cases from the allegations in this case.

      6.  <u>Count VI</u>

Count VI is a breach of contract claim.  Plaintiff alleges that it had an agreement with defendant to provide its FOREVER FIT program materials subject to a license agreement and that defendant has violated the license agreement.  Plaintiff has attached an unsigned copy of the license agreement to the first amended complaint.  Plaintiff alleges that defendant has breached the terms of the license agreement.

---

[126]<u>See also</u> <u>Bro-Tech Corp. v. Thermax, Inc.</u>, --F. Supp. 2d--, 2009 WL 2854891 (E.D. Pa. Sept. 3, 2009)(continued use of stolen trade secrets is not enough to constitute a RICO pattern); <u>Binary Semantics Ltd. v. Minitab, Inc.</u>, No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008)(same, citing other cases from the Eastern District of Pennsylvania); <u>Gen. Elec. Co. v. Iljin Corp.</u>, 1993 WL 41752, at *4-5 (D. Mass Feb. 12, 1993)(theft of trade secrets from one company does not amount to a RICO pattern despite claims of repeated receipt and transportation of the stolen trade secrets).

[127]948 F. Supp. 670, 678-79 (E.D. Mich. 1996).

[128]750 F.Supp. 838, 842 (N.D. Ohio 1990).

Defendant argues that plaintiff has not stated a plausible claim for breach of contract because plaintiff has not attached a signed license agreement or made reference to a signed license agreement.

The Court does not believe a signed license agreement is required to state a breach of contract claim. Kansas law recognizes that parties may reach a binding contract without executing formal documents.[129] Other courts before and after Twombly, have denied Rule 12(b)(6) motions even though an executed contract was not referred to in the breach of contract claim.[130] While the Court understands defendant's desire for more clarity, the Court finds plaintiff's breach of contract claim is plausible as alleged.

7. Count VII

Count VII alleges tortious interference with contract. Plaintiff asserts that defendant encouraged its franchisees to violate the license agreement by copying, distributing and republishing FOREVER FIT proprietary materials. Specifically,

_____

[129]See Phillips & Easton Supply Co. v. Eleanor Int'l, Inc., 512 P.2d 379, 384-85 (Kan. 1973).

[130]See A to Z Machining Servs., Inc. v. Applied Solar Tech., No. CIV-09-0477-F, 2009 WL 2169855, at *4 (W.D. Okla. July 20, 2009); Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC, --F. Supp. 2d--, 2009 WL 901500, at *11 (S.D. Fla. Mar. 30, 2009); TEKsystems, Inc. v. Modis, Inc., No. 08 C 5476, 2008 WL 5155720, at *3-4 (N.D. Ill. Dec. 5, 2008); Granite Partners, L.P. v. Bear, Stearns & Co., 58 F. Supp. 2d 228, 250-51 (S.D.N.Y. 1999).

plaintiff alleges that defendant placed unlawful infringing copies of FOREVER FIT materials on its website for downloading by others in violation of the license.[131]  Plaintiff also alleges that defendant committed tortious interference with contract by interfering with plaintiff's efforts to enforce the license agreement.[132]  Plaintiff alleges that defendant was aware that its franchisees purchased the FOREVER FIT materials and was aware of the license agreement governing the use of the materials.[133]  Plaintiff does not identify which franchisees violated the license agreement, exactly when the violations occurred, or exactly which parts of the FOREVER FIT program materials were copied by each franchisee.

In Kansas, the elements of a claim for tortious interference with a contract are 1) the contract; 2) the defendant's knowledge thereof; 3) defendant's intentional procurement of its breach; 4) the absence of justification; and 5) damages resulting therefrom.[134]

Defendant asserts that plaintiff has not sufficiently alleged the contract with which it allegedly interfered.  The

---

[131]FAC, ¶ 119.

[132]FAC, ¶ 122.

[133]FAC, ¶¶ 115-17.

[134]<u>Dickens v. Snodgrass, Dunlap & Co.</u>, 872 P.2d 252, 257 (Kan. 1994).

Court rejects this contention.  The complaint adequately

identifies the license agreement as the contract.  Defendant

further contends that plaintiff inadequately identifies what

materials were copied in violation of the license agreement, who

copied the materials and when or where the copying occurred.  The

complaint alleges that defendant's franchisees, who had license

agreements with plaintiff, made unauthorized copies of FOREVER

FIT program materials some time after March 27, 2007.  What was

copied is identified with a degree of particularity.  Who copied

the materials is identified as franchisees who entered license

agreements with plaintiff.  It is alleged that defendant was

informed which franchisees entered these agreements on a monthly

basis.[135]  This activity allegedly occurred some time after March

27, 2007.  So, there is a general time parameter for the alleged

breach. These allegations are sufficient to state a plausible

claim for tortious interference with a contract.[136]

        8.  <u>Count VIII</u>

    This count alleges a claim of unfair competition under

Kansas common law.  The complaint alleges that defendant used

---

[135]FAC, ¶ 115.

[136]The court will not reach the issue of whether interference
with defendant's efforts to enforce the license agreement states
a claim for tortious interference with contract.  We note that
neither side has addressed this question in any depth.  <u>See</u>
<u>Phillips v. Hillcrest Med. Ctr.</u>, 244 F.3d 790, 800 n.10 (10th
Cir. 2001)(refusing to consider an argument which is unsupported
by authority, legal or otherwise).

plaintiff's FOREVER FIT name in connection with defendant's "Waist Away" program in a manner which is likely to cause confusion and deceive the public.[137]  Defendant contends that plaintiff should have described this claim with more factual specificity and asserts, in its reply brief, that the claim should be dismissed for the same reasons given in relation to Counts III and IV.  The Court has rejected those reasons previously.  Thus the Court finds that Count VIII properly states a claim.

     9.  <u>Count IX</u>

Finally, Count IX makes a state law trademark infringement claim under K.S.A. 81-213.

K.S.A. 81-213 provides in part:

> [A]ny person who : (a) Uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of *a mark registered under this act* in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or (b) reproduces, counterfeits, copies, or colorably imitates *any such mark* . . . shall be liable in a civil action by the registrant. . . .

(Emphasis added).

Defendant contends that this claim should be dismissed because plaintiff does not allege that it registered its trademark in Kansas.  Plaintiff responds that K.S.A. 81-217

------

[137]FAC, ¶ 128.

provides that the statute should not be construed to adversely affect the enforcement of common law rights in trademarks. Plaintiff further argues that the Kansas Trademark Act is supposed to be interpreted in a manner consistent with the federal system of trademark registration and protection.

Requiring plaintiff to allege that it registered its trademark in Kansas in order to bring a claim under K.S.A. 81-213 is not inconsistent with federal trademark law or state common law. It simply follows that plain language of the statute. Therefore, the Court rejects plaintiff's arguments and grant defendant's motion to dismiss Count IX.

III. CONCLUSION

In conclusion, the court shall dismiss Counts V and IX for failure to state a claim. Otherwise, defendant's motion to dismiss is denied consistent with the language of this opinion.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to dismiss (Doc. 11) is **granted in part and denied in part**. The motion to dismiss pursuant to Rule 12(b)(6) is granted with respect to Counts V and IX. The remainder of defendant's motion is denied.

**IT IS SO ORDERED.**

Dated: November 19, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE